**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-0154-WJM-KLM

CHOICE GENETICS USA, LLC,

    Plaintiff,

v.

THE PEETZ CO-OPERATIVE COMPANY,

    Defendant.

---

**ORDER DENYING DEFENDANT'S RENEWED MOTION TO DISMISS**

---

This action, for negligence, breach of contract, and breach of implied warranty of fitness for a particular purpose, is pending under the Court's diversity jurisdiction, 28 U.S.C. § 1332.  Now before the Court is Defendant's Renewed Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6).  (ECF No. 38 (the "Motion").)  For the reasons explained below, the Motion is denied.

## I.  LEGAL STANDARD

Defendant brings its Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) (*see* ECF No. 38 at 1), under which a party may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted."  The Rule 12(b)(6) standard ordinarily requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is whether the complaint "state[s] a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Here, Defendant does not challenge the sufficiency of Plaintiff's pleading, but instead argues that Plaintiff is estopped from bringing its claims, and argues for dismissal because Plaintiff is not the real party-in-interest. The Court has some doubts whether motions seeking dismissal on these grounds can always be resolved under Rule 12(b)(6). In many cases, analysis of judicial estoppel and/or real party-in-interest determinations might depend upon resolution of factual disputes, which is not part of a typical Rule 12(b)(6) analysis. *See generally* 6A Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 1554 (3d ed., Jan. 2017 update) (noting courts may allow discovery and take testimony to ascertain the real party in interest).

However, neither of Defendant's arguments implicates the Court's subject matter jurisdiction. *See Smith v. United Parcel Serv.*, 578 F. App'x 755, 758, 759 (10th Cir. 2014); *Esposito v. United States*, 368 F.3d 1271, 1274 (10th Cir. 2004). Also, in the bankruptcy context raised here, "many courts have in fact resolved the issue of judicial estoppel upon a 12(b)(6) motion." *Carr v. Beverly Health Care & Rehab. Servs., Inc.*, 2014 WL 31390, at *1 (N.D. Cal. Jan. 3, 2014) (collecting cases).

Here, the Court concludes it can resolve the issues raised under a Rule 12(b)(6) analysis, for which both parties also argue. The parties have docketed exhibits to their briefs—specifically, filings from Plaintiff's bankruptcy proceeding—to establish facts outside the four corners of Plaintiff's Complaint. The Court may take judicial notice of these materials and rely on them under either Rule 12(b)(1) or 12(b)(6).[1] Given these

---

[1] *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) ("[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to

materials, the Court can resolve the issues raised by Defendant's motion assuming the factual contentions in Plaintiff's Complaint are true, while taking judicial notice of the materials outside the Complaint to establish additional uncontested facts.

## II. BACKGROUND

The following facts are drawn from Plaintiff's Complaint and assumed to be true, and from materials of which the Court takes judicial notice.

Plaintiff is in the business of producing and marketing breeding swine for sale to pig farmers, and sells animals with desirable genetic characteristics. (ECF No. 34 ¶¶ 2–4.) Since 2009, Plaintiff has purchased feed for its swine herds in Eastern Colorado from Defendant. (*Id.* ¶¶ 5, 14.) Plaintiff relies on a "two-step supply chain" in which non-party Suther Feeds, Inc. ("Suther") prepares feeding mixes, also known as base mixes, which Defendant incorporates into bulk feed rations for delivery to Plaintiff. (*Id.* ¶¶ 15–16.) Different base mixes and rations are tailored to the needs of different categories of animals. (*See id.* ¶¶ 15–16.) As relevant here, Suther provides a "gestation mix" for pregnant sows, and a "grower mix," "for swine between adolescence and maturity." (*Id.* ¶ 15.) Defendant prepares finished feed rations by combining one of Suther's base mixes with "bulk feedstuffs and other ingredients added by [Defendant] as specified by [Plaintiff's] formula." (*Id.* ¶ 16.)

In December 2013, Defendant communicated to Suther that it might be unable to meet Plaintiff's needs for gestation ration due to a shortage of gestation mix. (*Id.* ¶ 17.)

---

dismiss into a motion for summary judgment." (internal quotation marks omitted)); *Mid-S. Iron Workers Welfare Plan v. Harmon*, 645 F. App'x 661, 665 (10th Cir. 2016) ("Courts may take judicial notice of proceedings in other courts . . . if those proceedings have a direct relation to the matters at issue." (internal quotation marks omitted)).

Plaintiff agreed to accept a "one-time" substitution of grower rations, in the event Defendant could not deliver gestation rations. (*Id.* ¶ 18.) However, Defendant never ran out of gestation mix. (*Id.* ¶ 19.) Nevertheless, on twelve occasions between February 11, 2014 and March 25, 2014, Defendant delivered grower rations for Plaintiff's pregnant sows, rather than gestation rations. (*Id.* ¶¶ 20, 21, 25.)

During this same period, on February 13, 2014, Plaintiff petitioned for Chapter 11 Bankruptcy protection in the Southern District of Iowa. (*Id.* ¶ 24.) Defendant was included in a class of impaired creditors in Plaintiff's bankruptcy petition, with an unsecured claim of $206,404.40. (*See* ECF No. 38-1 at 4.)[2] The bankruptcy petition did not list any claims against Defendant among Plaintiff's assets. (*Id.* at 10–15.)

Plaintiff first learned that Defendant had supplied grower rations in place of gestation rations on February 25, 2014. (ECF No. 34 ¶ 25.) Although nothing about the delivered grower rations looked different than the gestation rations (*id.* ¶ 21), Plaintiff alleges the grower rations were inappropriate for pregnant sows, and "critically deficient of several vital minerals and vitamins" (*id.* ¶ 22). As alleged by Plaintiff, the improper feed "devastated" Plaintiff's herd, beginning "on or after March 11, 2014":

> The improper feed . . . devastated [Plaintiff's] herd and swine-breeding operations. As a result of the improper feed, and beginning on or after March 11, 201[4], sows went into 'stress shock' and suffered, among other things, critically low blood calcium levels. These conditions inhibited proper milk production, forcing [Plaintiff] to prematurely wean starving piglets * * * * more than 400 sows died, were destroyed, or were subsequently culled as a result of the improper rations. In addition, more than 1500 piglets died after birth, and

---

[2] The Court takes judicial notice of the docket and filings in Plaintiff's bankruptcy proceeding, *In Re Choice Genetics USA, LLC*, Case No. 14-00242-lmj11 (Bankr. S.D. Iowa).

> hundreds of in-utero piglets were lost * * * * Entire generations of breeding sows and gilts . . . were lost, including . . . the most genetically-prized and valuable animals in [Plaintiff's] herd."

(*Id.* ¶¶ 26–30.)

In Plaintiff's bankruptcy case, Plaintiff proceeded as debtor-in-possession. The First Amended Joint Plan of Reorganization (the "Plan") was filed on July 14, 2014. (ECF No. 42-1.) The Plan included Defendant in a class of impaired creditors with allowed general unsecured claims. (*Id.* at 41.) The Plan included a provision that stated "Confirmation of the Plan . . . vests all of the property of the Debtor's Estate, including Causes of Action, in the Reorganized Debtor." (*Id.* at 27.) The term "Causes of Action," was defined to include "[a]ll causes of action of any kind held by the Debtor whether or not . . . the subject of presently pending lawsuits . . . including, without limitation, (a) causes of action belonging to the Debtor as of the Petition Date; (b) causes of action belonging to the Debtor that arose after the Petition Date; and (c) rights exercisable by the Debtor as Debtor-in-Possession." (*Id.* at 5.) As a creditor, Defendant voted to approve the Plan. (ECF No. 42-2.) The Bankruptcy Court confirmed the Plan on August 21, 2014. On Dec. 29, 2014, Plaintiff sought a final decree on the basis that the Plan had been fully administered, and the bankruptcy case was closed on January 26, 2015.

Plaintiff initiated this action on January 20, 2016 (ECF No. 1), pursuing claims for negligence, breach of contract, and breach of the implied warranty for fitness for a particular purpose, and claiming millions of dollars in damages, all arising from Defendant's delivery of grower feed instead of gestation feed. (ECF No. 34 ¶¶ 31–43.)

## II.  ANALYSIS

Defendant's Motion argues that Plaintiff's failure to disclose its potential lawsuit against Defendant as an asset in the bankruptcy case prevents it from pursuing suit now, on grounds of judicial estoppel and because Plaintiff may not be the real party-in-interest.  To analyze these arguments, the Court must first analyze the status of Plaintiff's claims in the bankruptcy case under applicable law.

### A.  Status of Plaintiff's Claims in Bankruptcy Case

#### 1.  Applicable Law

Under the Bankruptcy Code, the commencement of a bankruptcy case creates an estate that includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  The property of a bankruptcy estate is broadly defined, and encompasses conditional, future, speculative, and equitable interests of the debtor."  *U.S. ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909, 913 (8th Cir. 2001) (citations and internal quotation marks omitted).  "A basic tenet of bankruptcy law is that all assets of the debtor, including all pre-petition causes of action belonging to the debtor, are assets of the bankruptcy estate that must be scheduled for the benefit of creditors.  A debtor has an uncompromising duty to disclose whatever ownership interests are held in property."  *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Energy Mfg. Co. Inc.*, 173 F. Supp. 3d 815, 824 (N.D. Iowa 2016) (citations and internal quotation marks omitted).  Accordingly, "[u]pon filing of a bankruptcy petition, all assets of the debtor, including potential causes of action, become an asset of the bankruptcy estate."  *Harms v. Cigna*

*Ins. Cos.*, 421 F. Supp. 2d 1225, 1228 (D.S.D. 2006).

The initial question here is, therefore, whether Plaintiff had a "legal or equitable interes[t]" in the claims pursued in this case at the time its bankruptcy case commenced.  *See In re Vote*, 276 F.3d 1024, 1026 (8th Cir. 2002); *see also Matter of Swift*, 129 F.3d 792, 795 (5th Cir. 1997) ("our first task, then, is to determine whether Swift had a property interest in the causes of action against State Farm at the time he filed bankruptcy").

On the question of how to analyze when a claim against a bankruptcy debtor arose, and therefore whether it is a is pre- or post-petition claim, "[t]he circuits are divided as to whether to use a conduct theory, which determines the date of a claim by the date of the conduct giving rise to the claim, or an accrual theory, which determines the date of a claim pursuant to the state law under which liability for the claim arose."  *In re Parker*, 313 F.3d 1267, 1269 (10th Cir. 2002).  The parties argue over which of these tests the Court should apply.  Regardless of whether this circuit split affects the analysis of a cause of action that belongs to the debtor or the estate, Plaintiff's bankruptcy petition was filed in the Southern District of Iowa, so Eighth Circuit precedent controls.[3]

The relevant legal standard is that "the property of the bankruptcy estate includes all causes of action *that the debtor could have brought at the time of the*

---

[3] *See, e.g.*, *In re Globe Illumination Co.*, 149 B.R. 614, 617 (Bankr. C.D. Cal. 1993) ("a decision of a circuit court of appeal is binding on all lower courts in the circuit, including district courts and bankruptcy courts . . . even if there is a split of opinion between the controlling circuit and another circuit court of appeals" (citations omitted)); *In re Hoffman*, 70 B.R. 155, 161 (Bankr. W.D. Ark. 1986) (Bankruptcy Court was bound by Eighth Circuit precedent despite circuit split; *see generally*, 8 Hon. William L. Norton, Jr., *Norton Bankruptcy Law & Practice* § 170:17 (3d ed., Jan. 2017 update) ("inferior courts in a circuit are bound by pronouncements of law of that circuit's court of appeals").

*bankruptcy petition*." *Gebert*, 260 F.3d at 913 (emphasis added). Courts applying this "could have brought" analysis also describe it in terms of whether the cause of action had *accrued* at the time of the bankruptcy petition. *See, e.g. Harms*, 421 F. Supp. 2d at 1228–29 ("In a Chapter 7 bankruptcy proceeding, only causes of action that have accrued before filing of the bankruptcy petition are assets of the bankruptcy estate. Any cause of action that accrues *after* the filing of the bankruptcy petition is property of the debtor. Accordingly, the debtor is not required to disclose causes of action that accrue after filing of the petition"); *Garcia v. Bank of Am.*, 2014 WL 5685518, at *3 (D. Minn. Feb. 5, 2014) ("The question for the Court, then, is whether the claims that Plaintiffs now assert in the present action 'belonged' to them—or, in other words, whether those claims had already 'accrued'—when Plaintiffs filed for bankruptcy . . . thus becoming part of the bankruptcy estate." (citing *Gebert*)).

Where, as here, the disputed causes of action arise under state law, the Court must look to state law to determine whether they had accrued—*i.e.*, whether Plaintiff "could have brought" them—at the time of the petition. *See Matter of Swift*, 129 F.3d 792, 795 (5th Cir. 1997) (determining whether negligence and breach of fiduciary duty claims had accrued for bankruptcy purposes by reference to state law defining those claims); *cf. In re Parker*, 313 F.3d at 1269 (accrual test looks to state law). A choice of law analysis is therefore the necessary next step in the Court's analysis.

   2.   Choice of Law

The parties cite both Colorado and Iowa law, but neither takes a clear position on which applies. (*See* ECF No. 42 at 6; ECF No. 44 at 2–3.) In this diversity action, the

Court "applies the conflict of law rules of the forum state." *Kipling v. State Farm Mut. Auto. Ins. Co.*, 159 F. Supp. 3d 1254, 1268 (D. Colo. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 497 (1941)).  Colorado follows the Restatement (Second) of Conflict of Laws for both tort and contract claims.  *Wood Bros. Homes v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979) (contract claims); *First Nat'l Bank v. Rostek*, 514 P.2d 314, 320 (Colo. 1973) (tort claims).

Neither party suggests they have any contractual choice of law agreement, so for Plaintiff's contractual claims, the Court applies "the local law of the state which, with respect to [the relevant rights and duties of the parties,] has the most significant relationship to the transaction and the parties."  Restatement (Second) of Conflict of Laws § 188(1).  The "contacts to be taken into account" include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."  *Id.* § 188(2).  The overall objective is to "locate the state with the 'most significant relationship' to the particular issue."  *Wood Bros.*, 601 P.2d at 447.

Here, the Court finds the place of performance and the location of the subject matter are controlling.  Defendant is domiciled and operates in Colorado.  Plaintiff is domiciled in Iowa, but with ownership in France; the operations relevant here are in Colorado.  The alleged breach(es) of contract and warranty arose from non-performance in Colorado, including formulation of feed rations in Colorado, delivery in Colorado, and leading to injuries allegedly suffered in Colorado.  Viewing these

contacts as a whole, the Court will apply Colorado law.

Similarly, for Plaintiff's negligence claim, the Court applies the law of the state with the "most significant relationship to the occurrence and the parties," taking into account: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145(1)–(2). Absent any argument from the parties on how to balance these factors, the Court will also apply Colorado law to Plaintiff's tort claim, based on the place where the injury occurred, the place the conduct causing the injury occurred, and the place where the parties' relationship is centered for purposes of Plaintiff's allegations (*i.e.*, where the swine feed was manufactured, delivered, and consumed).

3. Whether Plaintiff's Causes of Action Had Accrued as of the Commencement of the Bankruptcy Case

In Colorado, a cause of action for negligence accrues when both the injury and its cause are known or should have been known by exercise of reasonable diligence. Colo. Rev. Stat. § 13-80-108(1).[4] Plaintiff's Complaint alleges that it was not aware of Defendant's allegedly negligent conduct until at least February 25, 2014 (ECF No. 34

---

[4] The issue of "accrual" in this context is different from determining when the claims accrued for purposes of the statute of limitations. *See Matter of Swift*, 129 F.3d at 795; *see also In re Brown*, 363 B.R. 591, 605 (Bankr. D. Mont. 2007) (applying Ninth Circuit's "could have been brought" accrual test). The controlling question remains whether the claims "could have been brought" at the time of the bankruptcy petition. *Gebert*, 260 F.3d at 913; *In re Brown*, 363 B.R. at 605. For this reason, Defendant's argument that Plaintiff's claims accrued pre-petition under the Iowa statutes of limitations, Iowa Code §§ 554.2725 & 554, would not lead to a different outcome, even if Iowa law controlled. Plaintiff could not have brought its claims at the time of the bankruptcy petition, since it had not yet suffered any damages. The language of the Colorado limitations statute is not controlling, but reinforces this point.

Case 1:16-cv-00154-WJM-KLM Document 56 Filed 02/28/17 USDC Colorado Page 11 of 20

¶ 25), and that the injuries to Plaintiff's swine herds did not begin before March 11, 2014 (*id.* ¶ 26.) Accepting, as it must, these allegations as true for purposes of the Motion, the Court concludes that Plaintiff's negligence claim is not a cause of action which Plaintiff "could have brought" at the time it petitioned for bankruptcy on February 13, 2014. This cause of action is therefore not property of the estate which Plaintiff could or should have disclosed with its petition. *See Gebert*, 260 F.3d at 913; *see also Vigil v. Franklin*, 103 P.3d, 322, 325 (Colo. 2004) (elements of a *prima facie* negligence claim include both that "the plaintiff was injured" and that "defendant's breach caused that injury"); *Matter of Swift*, 129 F.3d at 796 ("The accrual of a cause of action is a concept closely tied to the fundamental purpose of a cause of action—to make an injured party whole. Damages, then, are a prerequisite to a cause of action. Without damages, there is no injury to remedy." (applying Texas law)).

The same result obtains with respect to Plaintiff's breach of contract and implied warranty claims. *See W. Distrib. v. Diososio*, 841 P.2d 1053, 1058 (Colo. 1992) (elements of a breach of contract claim include "resulting damages to the plaintiff"); *Simon v. Coppola*, 876 P.2d 10, 15 (Colo. App. 1993) (prima facie elements of breach of implied warranty for fitness for a particular purpose include showing both breach and that "the breach was a cause of the plaintiff's injuries").

Accordingly, the Court concludes that Plaintiff's causes of action against Defendant had not accrued, for bankruptcy purposes, as of the time of Plaintiff's bankruptcy petition; therefore, they were not part of the bankruptcy estate when Plaintiff's petition was filed. *Cf. Gebert*, 260 F.3d at 913 (at time of bankruptcy filing,

11

debtors "possessed all of the information necessary to file the . . . claim," and it was therefore property of the bankruptcy estate). These causes of action therefore did not become property of the bankruptcy estate under 11 U.S.C. § 541(a)(1) at the commencement of the bankruptcy case, and Plaintiff was not required to disclose them.

Defendant's arguments and cited authority do not support a different result. Defendant cites numerous cases that applied a "conduct theory" test, or whether claims were "sufficiently rooted in the pre-bankruptcy past," in situations where the conduct giving rise to the lawsuits clearly pre-dated (or was simultaneous to) the bankruptcy petition.[5] These cases are unavailing here, since the Eighth Circuit's accrual test is controlling; in addition, Defendant has not responded to Plaintiff's arguments distinguishing these cases from the facts here. (*See* ECF No. 44 at 2–3.)

4. Bankruptcy Amendments

Defendant also argues that even if Plaintiff were not obligated to disclose its potential lawsuit against Defendant at the time it petitioned for bankruptcy, it was obligated to disclose its causes of action against Defendant in the amendments and monthly operating reports filed later in the bankruptcy case. (ECF No. 38 at 4, 5; ECF

---

[5] *See* ECF No. 38 at 5–7 (citing cases applying "conduct theory" or "sufficiently rooted" test, including *Shields v. U.S. Bank Nat. Ass'n ND*, 2006 WL 3791320, at *6 (D. Kan. Dec. 22, 2006) (holding at summary judgment phase that trustee owned plaintiff's claims because the allegedly unlawful conduct had been "apparent long before plaintiff filed bankruptcy"); *In re Richards*, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000) (compelling debtor to turn over cause of action where "[a]ll of the allegedly wrongful conduct giving rise to the debtor's claim occurred . . . more than twenty-five years prepetition"); *Field v. Transcon. Ins. Co.*, 219 B.R. 115, 119 (E.D. Va. 1998) (holding trustee controlled insurance bad faith claim where both the rights arising under insurance policy and the accident precipitating the claim pre-dated the bankruptcy filing)). *See also In re Alvarez*, 224 F.3d 1273, 1277 (11th Cir. 2000) (legal malpractice claim arising from filing of the bankruptcy petition was part of the estate because the elements of the claim were complete at the same time the petition was filed).

No. 44 at 5–11.) Defendant cites *Jethroe v. Omnova Solutions, Inc.* 412 F.3d 598, 600 (5th Cir. 2005), and *Mowrey v. Chevron Pipe Line Co.*, 315 P.3d 817 (Idaho 2013), for the propositions that a debtor is "under an affirmative duty during the pendency of bankruptcy to amend their schedules to disclose all potential assets," *id.* at 821, and that a debtor's "obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one," *Jethroe*, 412 F.3d at 600 (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)). Defendant argues that despite filing numerous amendments and operating reports in the bankruptcy case (*see* ECF No. 44 at 5–7), the claims brought in this lawsuit were never disclosed as assets (*id.* at 7; ECF No. 38 at 4.)

As a general matter, it is true that "[t]he duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action." *In re Coastal Plains, Inc.*, 179 F. 3d at 208; *see also In re Augustine*, 2009 WL 5068412, at *3 (Bankr. N.D. Iowa Dec. 7, 2009) ("The debtor must amend the schedules if circumstances change or if the debtor otherwise becomes aware that the original schedules are not accurate."). However, Defendant has not at this point shown specifically how a continuing duty to disclose applied in the bankruptcy proceedings here, given that the causes of action had not accrued "as of the commencement of the case," 11 U.S.C. § 541(a)(1), that Plaintiff maintained control of the claims as debtor-in-possession, and that Defendant approved a bankruptcy Plan that vested ownership of all causes of action with Plaintiff upon reorganization.

In any event, the Court is not able to determine whether Plaintiff failed to meet its

13

disclosure obligations in the bankruptcy amendments at this stage of litigation, and on the record presented here. Plaintiff's alleged non-disclosure in the amendments was argued in general terms in Defendant's Motion (ECF No. 38 at 3, 4, 5), but Defendant made far more detailed factual and legal arguments on this issue in its Reply Brief. (ECF No. 44 at 5–11). At that point, Defendant effectively conceded that the initial Motion had argued for the wrong legal standard, under a "conduct theory," so the Reply changed the focus of Defendant's arguments from the initial bankruptcy petition to the amendments. (*See generally id.* at 2–11.) Given Defendant's change in legal positions, Plaintiff has not had opportunity to respond to the specific arguments advanced in Defendant's Reply Brief. Plaintiff has argued that, given the opportunity to do so, it could explain "how and where its losses . . . were properly and accurately reflected" in the amended disclosures and operating reports. (ECF No. 48 at 3.)

Given the record presently before it, the Court concludes that factual disputes, particularly the interpretation of Plaintiff's bankruptcy amendments and operating reports, prevent dismissal on this grounds. At a minimum, it appears the Court would need to resolve a complicated and fact-specific accounting dispute as to whether the value of the alleged damages to Plaintiff's "devastated" swine herd were or were not adequately accounted in the amended bankruptcy schedules. (*See generally* ECF No. 38-3.) The Court will not undertake this analysis or attempt resolution of disputed facts in ruling on a Rule 12(b)(6) motion. *See Ridge at Red Hawk* 493 F.3d at 1177. Moreover, the relevant determination for present purposes is whether Plaintiff has taken "*clearly* inconsistent" positions. *See* Part III.B.1., *infra*. At a minimum, the current record does not show that Plaintiff's bankruptcy filings were "clearly inconsistent" with

14

its positions in this lawsuit.

Moreover, the Court will not dismiss Plaintiff's otherwise well-pled and contested claims on this grounds in the current posture. See *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (granting a motion to dismiss "is a harsh remedy which must be cautiously studied . . . to protect the interests of justice." (internal quotation marks omitted)). Accordingly, there is no need to further evaluate in detail Plaintiff's obligations to amend its bankruptcy filings at this phase of litigation.

**B.     Grounds Argued for Dismissal**

The Court next moves to applying the analysis above to the two legal grounds on which Defendant argues for dismissal.

1.     Judicial Estoppel

Defendant's primary argument is that judicial estoppel prevents Plaintiff from pursuing its causes of action because they were not disclosed in the bankruptcy case.

a.     *Judicial Estoppel Doctrine*

"The Supreme Court first recognized the doctrine of judicial estoppel in *New Hampshire v. Maine*. The Court explained that the doctrine's 'purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)).

"[T]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire*,

532 U.S. at 750.  However, three factors "typically inform the decision whether to apply the doctrine in a particular case," *id.,* including: (1) that "a party's later position must be 'clearly inconsistent' with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position . . . creat[ing] the perception that either the first or the second court was misled," and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751–51.  In addition, "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." *New Hampshire*, 532 U.S. at 753.  However, these factors "do not establish inflexible prerequisites or an exhaustive formula," and "[additional considerations may inform the doctrine's application in specific factual contexts." *Id.* at 751.  Judicial estoppel remains "an equitable doctrine invoked by a court at its discretion." *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013) (quoting *New Hampshire*, 532 U.S. at 750).

In the context raised here, courts have frequently held that a debtor who fails to disclose a claim or lawsuit as required in a bankruptcy proceeding is thereafter estopped from pursuing the undisclosed claim for its own benefit. *See, e.g.*, *id.* at 1094 ("[plaintiffs/debtors] adopted an inconsistent position, which was accepted by the bankruptcy court, and which would provide . . . an unfair advantage if not estopped from pursuing their lawsuit"); *Eastman*, 493 F.3d at 1160 ("discharge in bankruptcy is sufficient to establish a basis for judicial estoppel"); *Harms*, 421 F. Supp. 2d at 1228 ("Failure to disclose acts as an affirmative statement that no cause of action exists, a

16

position inconsistent with a later attempt to enforce the cause of action in a separate proceeding. Judicial estoppel bars debtors who fail to disclose an accrued claim as an asset in their bankruptcy proceedings from prosecuting the claim after discharge from bankruptcy." (citation omitted)).

      b.    *Application*

Here, judicial estoppel does require dismissal of Plaintiff's claims. Most significantly, Defendant has not established that Plaintiff was required to disclose its claims as property of the bankruptcy estate, but failed to do so. *See* Part III.A., *supra*. The Court therefore cannot say that Plaintiff has taken a "clearly inconsistent" position by pursuing its claims in this lawsuit. *See New Hampshire*, 532 U.S. at 751. To the extent Defendant's argument hinges on Plaintiff's failure to *amend* its bankruptcy filings (*see generally* ECF No. 44 at 5–13), the factual record at this stage does not show that any failure to amend Plaintiff's bankruptcy disclosures was "clearly" inconsistent with its current litigation. *See* Part III.A.4., *supra*.

In addition, applying the third *New Hampshire* factor, the Court does not find that any benefit to Plaintiff or any detriment to Defendant would be overly unfair if Plaintiff's claims proceed. As a creditor in the bankruptcy case, Defendant approved a reorganization plan that vested ownership of all causes of action, including those Plaintiff might have pursued as debtor in possession, with Plaintiff as the reorganized debtor. This approval came at a time (approximately July 2014) when Defendant was presumably aware of the conduct underlying this lawsuit. Defendant does not claim that it objected to Plaintiff's disclosures (or amendments) as incomplete at any point

before the bankruptcy case terminated.

Defendant also does not seem to dispute that, if the claims in this lawsuit had been disclosed and included in the bankruptcy estate, Plaintiff could have pursued the same claims against Defendant as the debtor-in-possession. (*See* ECF No. 38 at 10–11.) Thus Defendant might have faced exactly the same claims and potential judgment in a suit brought on behalf of the estate. These circumstances do not show that failure to estop Plaintiff's claims at this stage of the present litigation would impose an unfair detriment.

The judicial estoppel cases cited by Defendant also do not support dismissal in the circumstances here. In *Eastman*, the plaintiff filed for bankruptcy with his lawsuit already pending and the court inferred that his failure to disclose had been deliberate or intentional. 493 at 1153, 1157. In *Guay v. Burack*, 677 F.3d 10, 13 (1st Cir. 2012), first cited in Defendants Reply, the case was resolved at the summary judgment phase, based on Plaintiff's failure to amend bankruptcy schedules, an issue the Court has determined it cannot resolve at this phase and on the present record.

2.  Real Party-in-Interest

Defendant also argues that Plaintiff "*may not* be the proper party-in-interest." (ECF No. 38 at 9 (emphasis added).) Defendant reasons that although Plaintiff remained the debtor-in-possession, *if* Plaintiff's claims had been disclosed, the bankruptcy Court "*might* have appointed a trustee." (*Id.* at 10 (emphasis added).) Further, Defendant argues that "because the matter was not disclosed, it could not have been abandoned under 11 U.S.C. [§] 554(d)," and so the claim remains property

of the bankruptcy estate, rather than property of Plaintiff. (*Id.* at 11.)

Initially, the Court concludes that this argument does not implicate its jurisdiction, but only whether Plaintiff is the proper party in interest. Courts, including the Tenth Circuit, have at times discussed similar situations as a matter of "standing," but without explaining whether this implicates constitutional standing (*i.e.*, whether the case involves a "case or controversy"), or merely "prudential standing" or an analogous judicial doctrine. *See, e.g., Smith v. Rockett*, 522 F.3d 1080, 1081 (10th Cir. 2008). The Tenth Circuit has more recently clarified that where the trustee of a named plaintiff's bankruptcy estate is the proper party to bring suit, this implicates only "real-party-in-interest principles, which do not impact subject matter jurisdiction." *Smith*, 578 F. App'x at 758 (citing, *inter alia*, *Esposito,* 368 F.3d at 1274 n.1). While unpublished, the Court finds this clarification correct, since the party issue does not show an absence of a "case or controversy."

Because the issue is not jurisdictional, it can be waived where a party does not argue it. *Smith*, 578 F. App'x at 759. Here, Defendant abandoned this argument, which is nowhere mentioned in its Reply Brief. (*See generally* ECF No. 44.) Moreover, the analysis in Section III.A. is dispositive of this argument. Defendant has not established that Plaintiff's claims were pre-petition property that became part of the estate under applicable law, so the speculative argument that *if* the claims had been disclosed, a trustee *might* have been appointed and *might* not have abandoned them also fails.

## IV.  CONCLUSION

For the reasons set forth, Defendant's Renewed Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) for Reasons of Judicial Estoppel and Proper Party-in-Interest (ECF No. 38) is DENIED.

Dated this 28th day of February, 2017.

BY THE COURT:

_____
William J. Martínez
United States District Judge